FILED

OCT 3 0 2007    NF

OCT. 30, 2007

MICHAEL W. DOBBINS

CLERK, U.S. DISTRICT COURT

JH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

CROWE CHIZEK AND COMPANY LLC,

Plaintiffs,

v.

GUITAR CENTER, INC. and MUSICIAN'S
FRIEND, INC.,

Defendants.

07CV 6128
JUDGE PALLMEYER
MAGISTRATE JUDGE NOLAN

## COMPLAINT

1.    Plaintiff Crowe Chizek and Company LLC ("Crowe") brings this action against defendants Guitar Center, Inc. ("Guitar Center") and its wholly-owned subsidiary, Musician's Friend, Inc. ("MFI"), to stop defendants' continuing infringement of Crowe's copyrighted software.  Crowe owns a registered copyright in its Ecommerce Framework and Integration computer software program (the "Software").

2.    Crowe informed Guitar Center and MFI of their infringement, but they continue to use the Software, in knowing violation of Crowe's rights.  Crowe now brings this action to enjoin the infringing use of its Software and to recover the monetary compensation to which it is entitled.

## PARTIES AND JURISDICTION

3.    Plaintiff Crowe Chizek and Company LLC is a limited liability company duly organized under the laws of Indiana, with a principal place of business at 320 East Jefferson Blvd., South Bend, Indiana 46624.  It maintains places of business in this District at One Mid America Plaza, Suite 700, Oak Brook Terrace, Illinois 60181 and 70 West Madison Street, Chicago, Illinois 60602.  Crowe provides business consulting services, including software

development and implementation services, such as the development of electronic commerce ("Ecommerce") software and systems that allow Crowe's clients to sell products and services over the Internet.

4.      Upon information and belief, defendant Guitar Center, Inc. is a for-profit corporation organized under the laws of Delaware, with a principal place of business at 5795 Lindero Canyon Road, Westlake Village, CA 91362. It maintains numerous places of business in this District, through its wholly owned retail subsidiary, including in Algonquin, Arlington Heights, Chicago, Country Club Hills, Highland Park, Joliet, Naperville, Rockford, South Chicago, and Villa Park, Illinois.

5.      Upon information and belief, defendant Musician's Friend, Inc. is a wholly-owned subsidiary of defendant Guitar Center, Inc., and is a for-profit corporation organized under the laws of Delaware, with a principal place of business at 931 Chevy Way, Medford, OR 97504. Upon information and belief, it transacts substantial business in this district through its direct response catalog and website businesses.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Crowe's claims for copyright infringement and related claims pursuant to 17 U.S.C. § 501, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

7.      The defendants are subject to personal jurisdiction in this Court because, upon information and belief, they have purposefully established substantial, continuous, systematic, and ongoing contacts with this District. Guitar Center, through its wholly owned subsidiary, maintains at least ten permanent retail locations in this District, all of whom do business under the Guitar Center name and mark. Upon information and belief, MFI, one of the world's largest direct marketers of music gear, knowingly targets consumers in this District and annually

2

receives a substantial amount of revenue from consumers in this District. In addition, the defendants' knowing and infringing use of Crowe's copyrighted software causes foreseeable harm to Crowe in this District, because defendants transact substantial business in this District, and because Guitar Center, in particular, uses or possesses real estate in this District.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 1400(a) because the defendants are subject to personal jurisdiction in this District, and because the copyright that is the subject of this action is located in this District.

## FACTUAL ALLEGATIONS

9.     Crowe created the Software and owns all right, title, and interest to the copyright in the Software. Crowe registered the copyright in the Software with the United States Copyright Office, which duly issued Registration No. TXu 1-569-001.

10.     In January 2005, Dennis Bamber, Inc. ("DBI") was a for-profit music retail operation that conducted business through direct response catalogs and websites, including those branded as The Woodwind and Brasswind and Music123. The Woodwind and Brasswind brand primarily targets band, orchestra, and combo instrument purchases. The Music123 brand targets purchases of guitars, keyboards, amplifiers, and pro audio and recording equipment.

11.     In January 2005, Dennis Bamber, Inc. ("DBI") engaged Crowe to develop the Software for DBI's Ecommerce websites and to implement and service the Software for DBI (the "Agreement"). A true and correct copy of the Agreement is attached as Exhibit A.

12.     Crowe designed the Software, which, upon information and belief, is currently used to operate Ecommerce websites originally run by DBI beginning on or around July 30, 2006, and now run by Guitar Center and MFI. Such websites include www.music123.com and www.wwbw.com.

13.     Pursuant to the Agreement, Crowe provided additional development and related consulting services in connection with the Software in response to three Requests for Services (the "Requests") signed by DBI, respectively, on August 29, 2006, September 19, 2006, and November 3, 2006. True and correct copies of the Requests are attached as Exhibit B.

14.     Because Crowe performed services as an independent contractor, it was the author and owner of the copyright in the Software. In the Agreement, Crowe agreed to assign its ownership of the copyright in the Software after DBI had paid all fees owed to Crowe.

15.     On November 21, 2006, DBI filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code, in an action commenced the United States Bankruptcy Court in the Northern District of Indiana (the "Bankruptcy Court"), *In re: Dennis Bamber, Inc. d/b/a The Woodwind & Brasswind*, Case No. 06-31800 (the "Bankruptcy Case").

16.     At the time that DBI filed for bankruptcy in November, 2006, DBI owed Crowe more than $320,000 in unpaid fees under the Agreement and related Requests, and in Schedule F of DBI's schedule of assets and liabilities, DBI listed Crowe as a creditor holding an uncontested, unsecured claim in the amount of $320,296.69.

17.     On or about January 30, 2007, the Bankruptcy Court entered an order approving the sale of substantially all of DBI's assets to Guitar Center's subsidiary, MFI. One of the assets that DBI did not transfer to MFI was the Agreement and DBI's potential interest in the Software. Had DBI done so, Crowe would have been paid the full amount of its uncontested $320, 296.69 claim.

4

18.     Because DBI failed to "assume" the Agreement in the Bankruptcy Case and assign such agreement to Guitar Center in connection with the sale of DBI assets, the Agreement was not transferred to MFI and was deemed "rejected" in the Bankruptcy Case. Accordingly, Crowe retained all right, title, and interest in and to the Software and Crowe was and remains the sole and exclusive holder of the copyright in the Software.

19.     Nevertheless, Guitar Center and MFI apparently obtained a copy of the Software as a result of their purchase of DBI's assets. They had no right or license to use the Software, but they began to use it anyway after January 30, 2007, in disregard of Crowe's exclusive rights under Section 106 of the Copyright Act.

20.     Crowe informed Guitar Center and MFI that they are infringing Crowe's registered copyright in the software. Although Crowe demanded that the defendants cease and desist their infringement, they have continued.

21.     Upon information and belief, Guitar Center and MFI are deriving significant benefits from their infringing activities. These wrongful benefits include the revenue from online sales that are made possible by Crowe's Software.

## COUNT I

## COPYRIGHT INFRINGEMENT

22.     Crowe restates and re-alleges all of the allegations contained in Paragraphs 1 through 21 as if fully set forth herein.

23.     Crowe owns the Software, the copyright in the Software, and the corresponding Certificate of Registration.

24.     Guitar Center and MFI have infringed the copyright in Crowe's Software by, among other things, using copies of the Software and making copies of the Software on their computer systems without license, assignment, or other authorization from Crowe.

5

25.     Guitar Center and MFI have continued to use and make copies of Crowe's Software after being notified in writing that they were not authorized to do so.  Consequently, their infringement is knowing, deliberate, and willful.

26.     As a result of their wrongful conduct, Guitar Center and MFI are liable to Crowe for copyright infringement pursuant to 17 U.S.C. § 501.

27.     Crowe has suffered, and will continue to suffer, substantial losses and is entitled to recover monetary compensation, including its actual losses and any and all profits Guitar Center and MFI have made as a result of their wrongful conduct, pursuant to 17 U.S.C. § 504.

28.     Crowe is also entitled to immediate injunctive relief pursuant to 17 U.S.C. § 502 and to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503.  Crowe has no adequate remedy at law for defendants' wrongful conduct because, among other things, (a) the copyright in the Software is unique and valuable property which has no readily determinable market value, and (b) defendants' wrongful conduct, and the resulting damage to Crowe, is continuing.

## REQUESTED RELIEF

WHEREFORE Crowe respectfully requests judgment as follows:

1.     That the Court enter a judgment against defendants that Guitar Center and MFI have willfully infringed Crowe's exclusive rights in the Software covered by Crowe's federally registered copyright in violation of 17 U.S.C. § 501;

2.     That the Court issue injunctive relief, pursuant to 17 U.S.C. §§ 502 and 503, that defendants, their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with defendants, be enjoined and restrained from:

6

    a.      using the Software;

    b.      making any copies of the Software;

    c.      otherwise engaging in any activity constituting an infringement of Crowe's rights in the Software;

3.      That the Court issue an order pursuant to 17 U.S.C. §§ 502 and 503 directing defendants to return all copies of the Software and related materials protected by Crowe's federally registered copyright;

4.      That the Court enter an order declaring that defendants hold in trust, as constructive trustees for the benefit of Crowe, their illegal profits obtained from their unlawful and infringing use of the Software and/or related materials;

5.      That the Court enter an order requiring defendants to provide Crowe a full and complete accounting of all profits obtained from their unlawful and infringing use of the Software and/or materials and of any other amounts due and owing as a result of defendants' illegal activities;

6.      That the Court order defendants to pay Crowe the costs of this action and reasonable attorneys' fees that they have incurred in prosecuting this action;

7.      That the Court grant Crowe such other and additional relief as it deems just and proper.

Respectfully Submitted,

**CROWE CHIZEK AND COMPANY LLC**

By:_____
        One of its attorneys

Robert Labate  (no. 6184945)
Peter Strand (no. 6196727)
HOLLAND & KNIGHT LLP
131 S. Dearborn St.
30th Floor
Chicago, IL  60603
(312) 263-3600
(312) 578-6666 (Fax)
Firm ID No. 37472


Dated:         October 30, 2007
               Chicago, Illinois

<u>**Exhibit List**</u>

<u>**to Plaintiff Crowe Chizek and Company LLC's Complaint**</u>

Exhibit A...............................................…..Development Agreement: the "Agreement"

Exhibit B.......................…...................…......…..Requests for Services: the "Requests"

# EXHIBIT A

## TO COMPLAINT

(Development Agreement: the "Agreement" )

## DEVELOPMENT AGREEMENT

THIS AGREEMENT is entered into effective this 17th day of January 2005, ("Effective Date"),by and between Crowe Chizek and Company LLC, a limited liability company, having a place of business at 330 East Jefferson Blvd, South Bend, Indiana, 46601 ("Crowe Chizek") and Dennis Bamber, Inc., having a place of business at 4004 Technology Drive, South Bend, IN 46628-9744 ("Client").

## RECITALS

Client desires to have Crowe Chizek develop for it new software, modifications to existing software, documents or other tangible deliverables ("Deliverables") and in connection there with Crowe Chizek may perform some services for Client.

Crowe Chizek desires to develop such Deliverables for Client and to perform any services associated therewith in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises and agreements set forth herein, and other good and valuable consideration, the parties hereto mutually agree as follows:

1.    Definitions

As used herein:

a.    "Statement of Work" means the detailed statement of development work and services to be performed by Crowe Chizek as set forth in Exhibit A attached hereto and made a part hereof, setting forth the specifications for the work to be performed; specific services to be performed by Crowe Chizek; a schedule for implementation and completion of the development work and services; the fees and expenses to be paid by Client (e.g., hourly rate or fixed fee); a list of the specific Deliverables to be developed by Crowe Chizek and delivered to Client pursuant to the work described therein; and the criteria for testing the Deliverables.

b.    "Client Confidential Information' means any information, written or oral, disclosed to Crowe Chizek or known by Crowe Chizek as a consequence of or through the development work performed by Crowe Chizek in accordance with this Agreement, including, but not limited to, information related to research, development, products under development, manufacturing, purchasing, accounting, engineering, marketing, selling, Client requirements, and the documentation thereof, including information supplied to Crowe Chizek from outside sources for the purpose of performing the development work, with the following exceptions:

        (1)    information which Crowe Chizek can demonstrate in writing was known by Crowe Chizek prior to being disclosed by Client to Crowe Chizek;

        (2)    information ascertainable or obtainable from public or published sources;

(3)    information received by Crowe Chizek from a third party who is not employed by or affiliated with Client and is not under an obligation to Client to maintain such information in confidence; and

(4)    information which is or becomes known to the public generally other than by a breach of this Agreement by Crowe Chizek.

c.    "Crowe Chizek Confidential Information" means any information, written or oral, disclosed to Client by Crowe Chizek related to Crowe Chizek's business, including, but not limited to, information related to research, development, products under development, manufacturing, purchasing, accounting, engineering, marketing, selling, and the documentation thereof, including information supplied to Client from outside sources for the purpose of performing the development work, with the following exceptions:

(1)    information which Client can demonstrate in writing was known by Client prior to being disclosed by Crowe Chizek to Client;

(2)    information ascertainable or obtainable from public or published sources;

(3)    information received by Client from a third party who is not employed by or affiliated with Crowe Chizek and is not under an obligation to Crowe Chizek to maintain such information in confidence; and

(4)    information which is or becomes known to the public generally other than by a breach of this Agreement by Client.

d.    "Inventions" means discoveries, concepts, and ideas, whether patentable or not, including, but not limited to, apparatus, processes, methods, compositions of matter, techniques, and formulae, as well as improvements thereto or know-how related thereto which are made, conceived, created, or acquired by Crowe Chizek or its officers, employees, agents, and the like in the course of performing the development work or services pursuant to a Statement of Work. "Inventions" does not include any discovery, concept, or idea conceived, created, or acquired by Crowe Chizek or its officers, employees, agents and the like prior to the date of a Statement of Work unless such discovery, concept, or idea was conceived, created or acquired in the course of performing work or services pursuant to a prior Statement of Work under this Agreement.

e.    "Works" means works of authorship fixed in any tangible medium of expression by Crowe Chizek or its officers, employees, agents, and the like in the course of performing the development work or services pursuant to a Statement of Work, including, but not limited to, notes, specifications, drawings, blueprints, flow charts, memoranda, correspondence, records, notebooks, computer programs, data bases, documentation, reports, and charts, regardless of the medium in which they are fixed, and all copies, in whole or in part, thereof. "Works" does not include any work of authorship which was fixed in a tangible medium of expression by Crowe Chizek or its officers,

2

employees, agents and the like prior to the date of a Statement of Work unless such work of authorship was fixed in a tangible medium of expression in the course of performing work or services pursuant to a prior Statement of Work under this Agreement.

      f.     "Agreement" means the terms and conditions herein, all Statements of Work, and all documents incorporated herein by reference.

      2.     <u>Statements of Work</u>

Under this Agreement, Client and Crowe Chizek may, from time to time, mutually agree on a development project which shall be described in a Statement of Work in the form set forth in Exhibit A. All Statements of Work shall be subject to acceptance by both Crowe Chizek and Client. Either party may elect not to accept a Statement of Work provided that acceptance is not unreasonably withheld. If either party elects not to accept a Statement of Work, then such Statement of Work shall not become a part of this Agreement. All Statements of Work must reference this Agreement. Upon acceptance by Crowe Chizek and Client of a Statement of Work such Statement of Work shall be signed by both parties. Only Statements of Work signed by both parties will become a part of this Agreement. All Statements of Work that are signed by both parties shall be numbered consecutively, attached hereto as part of Exhibit A, and shall be subject to, the terms and conditions of this continuing Agreement. In the event that there is any inconsistency between a term in a Statement of Work and the remainder of this Agreement, the term in the Statement of Work shall control, except that the terms of Sections 13 (Limited Warranties) and 14 (Limitation of Liability) shall control over any inconsistent terms in a Statement of Work and nothing in a Statement of Work shall be deemed to change or supersede the terms in Sections 13 and 14.

      3.     <u>Crowe Chizek Responsibilities</u>

Crowe Chizek shall develop the Deliverables and perform any services set forth in the Statements of Work that are mutually accepted by Crowe Chizek and Client in accordance with the schedule set forth therein and shall provide overall management of the development work and services in accordance with the Statements of Work.

      4.     <u>Client Responsibilities</u>

      a.     Client shall perform the tasks and obligations that are required to support the development work and services that have been identified in each Statement of Work that has been mutually accepted by Crowe Chizek and Client.

      b.     Client shall timely pay to Crowe Chizek the fees set forth in Section 5 in accordance with the schedule set forth in each Statement of Work for the work and services performed by Crowe Chizek.

3

c.     Failure of Client to perform in a timely manner the tasks and obligations required to support the development work and services or to pay Crowe Chizek on time in accordance with the schedule set forth in the applicable Statement of Work may, in the sole discretion of Crowe Chizek, result in a corresponding delay in the schedule for performing the work and services, or in the event of failure to pay, the termination of the Statement of Work of this Agreement in its entirety.

5.     Fees and Payment

a.     Client shall pay Crowe Chizek fees for the development work and services performed by Crowe Chizek in accordance with the rates, fixed amounts and schedules set forth in each Statement of Work.

b.     Crowe Chizek shall submit to Client invoices for the work and services performed under each Statement of Work and for actual reimbursable expenses incurred. Each invoice shall identify the Statement of Work and include a detailed description of the work and services in accordance with the schedules set forth therein performed by Crowe Chizek and documentation to support any reimbursable expenses.

c.     Client shall pay Crowe Chizek the amounts set forth in each invoice within thirty (30) days of Client's receipt of such invoice. Client shall pay a finance charge of 1½% per month on the balance not received by Crowe Chizek within thirty (30) days of Client's receipt of an invoice.

d.     Client may not withhold payment of any invoice for any reason except the rejection of a Deliverable under Section 9, and then only until such time as the Deliverable is accepted by Client.

6.     Changes in Statements of Work

Client or Crowe Chizek may request from the other a change to a Statement of Work. If a change in a Statement of Work is requested by either party, Crowe Chizek shall inform Client in writing if such change would result in additional costs to Client or a change in the implementation schedule for the work and services to be performed, giving the details thereof. No change to a Statement of Work shall be effective until agreed to in writing by both parties. All agreed-to changes shall be attached to the appropriate Statement of Work and shall become a part of this continuing Agreement.

7.     Taxes

Client shall pay all sales, use, property, excise, and other taxes (federal, state, local, or otherwise), including any tax penalties, but excluding Crowe Chizek's net income, which are levied or imposed by reason of Crowe Chizek's performance of any work or services under a Statement of Work. Client will furnish any certificate of exemption or similar document required to obtain exemption from any tax liability.

4

8.    Progress Reports and Meetings

a.    At least once every week, Crowe Chizek shall report to Client the progress of the work and services under each Statement of Work ("Progress Reports"). Progress Reports shall include a summary of accomplishments, difficulties, potential or actual slippage in meeting deadlines, Deliverables or portions thereof completed, and work and services in progress.

b.    Crowe Chizek or Client may propose meetings as necessary to discuss progress on completing the work and services. Such meetings shall take place at the locations and times mutually agreeable to Client and Crowe Chizek.

9.    Acceptance of Deliverables

Upon delivery by Crowe Chizek of a Deliverable to Client in accordance with a Statement of Work, Client shall have five (5) business days from the date of receipt of the Deliverable to evaluate, review and test such Deliverable ("Test Period") in accordance with the specifications and test criteria set forth in the applicable Statement of Work. In the event that Client believes that a Deliverable does not conform to the specifications or the test criteria set forth in the applicable Statement of Work, then Client shall notify Crowe Chizek in writing within the Test Period setting forth the reason or reasons why Client believes that such Deliverable does not conform. Client shall identify all non-conformities within a single written notice of rejection unless a non conformity prevents Client from evaluating or testing certain portions of a Deliverable. Client may reject a Deliverable only for its failure materially to conform to either the specifications or test criteria set forth in the Statement of Work. If Crowe Chizek has not received a written notice of rejection within the Test Period, then such Deliverable shall be deemed to be accepted by Client. If Client delivers to Crowe Chizek written notice of rejection of a Deliverable within the Test Period, then Crowe Chizek shall have thirty (30) days from the date of receipt of a written notice of rejection either (i) to correct the non-conformities that Client identifies in the written notice or (ii) to develop a plan mutually agreeable to Client and Crowe Chizek to correct the non-conformities that Client identified in the written notice within a period of time agreed to by the parties in the plan; but in no event will this be for a period of time less than thirty days. Upon correction, Crowe Chizek will resubmit the corrected Deliverable to Client for evaluation, review, and testing and the procedure set forth above shall be repeated. Such procedure shall continue until the earlier of (i) the expiration of the Test Period without delivery of a written notice of rejection by Client, or (ii) the date written notice of acceptance is delivered to Crowe Chizek by Client ("Date of Acceptance"). In the event that the client puts the Deliverable into "production use", then such Deliverable shall be deemed to be accepted by Client.

5

10.    Ownership of Invention and Works

a.    Upon payment to Crowe Chizek by Client of all fees set forth in a Statement of Work, all Inventions and Works conceived, made or created by Crowe Chizek, either solely or jointly with Client in the course of Crowe Chizek's performance of work under such Statement of Work shall be assigned to and become the exclusive property of Client, subject to the reservation of rights and non-exclusive license set forth in this Section.  Crowe Chizek will execute documents required to transfer ownership of any such Inventions or Works and the patent and copyright rights therein to Client.  At Client's expense, Crowe Chizek will assist Client in securing patent and copyright protection in such Inventions and Works.

b.    Upon payment to Crowe Chizek by Client of all fees set forth in a Statement of Work, Crowe Chizek will provide Client with one (1) copy of the source code for any computer software included in the Deliverables associated with such Statement of Work.

c.    Crowe Chizek hereby reserves the following rights in and to Inventions and Works conceived, made or created by Crowe Chizek, either solely or jointly with Client,  in the course of Crowe Chizek's performance of work or services under a Statement of Work, and Client hereby grants to Crowe Chizek a non-exclusive, perpetual, paid-up, irrevocable license to use portions of such Inventions and Works (including, but not limited to, reproduction thereof) in the performance of services or work for others, to modify portions of such Inventions and Works, and to reproduce and distribute portions of such Inventions, Works, and such modifications thereof in materials delivered to others in the performance of services or work for them.

11.    Non-Disclosure of Client Confidential Information

a.    Crowe Chizek acknowledges that all Client Confidential Information shall at all times remain the property of Client and Client shall have free and unlimited access at all times to all materials containing Client Confidential Information and shall have the right to claim and take possession of such materials on demand.

b.    Except as required in Crowe Chizek's duties to Client, Crowe Chizek will not, during the term of this Agreement or thereafter, directly or indirectly use, divulge, disseminate, disclose, lecture upon, or publish any Client Confidential Information without having first obtained written permission from Client to do so.

c.    Crowe Chizek will safeguard and maintain secret all Client Confidential Information and all documents and things that include or embody Client Confidential Information.

d.    In order to comply with its obligations under this Section, Crowe Chizek shall bind and engage all of its officers, employees, agents, contractors and the like who might reasonably be

6

expected to perform or to assist in the performance of the Services to an agreement having terms the same as or equivalent to the terms of this Section of this Agreement.

e.      Upon termination of this Agreement, for whatever reason, or upon request by Client, Crowe Chizek will deliver to Client all notes, drawings, memoranda, correspondence, documents, records, notebooks, printouts, disks, programs, electronic or magnetic storage media, and similar repositories of Client Confidential Information, including all copies thereof, then in Crowe Chizek's possession or under Crowe Chizek's control, whether prepared by Crowe Chizek or by employees or agents of Crowe Chizek.

f.      This obligation to safeguard and maintain secret Client Confidential Information shall continue for a period of one (1) year after the earlier of termination of this Agreement or completion of all work and services under all Statements of Work.

12.    <u>Non-Disclosure of Crowe Chizek Confidential Information</u>

a.      Client acknowledges that all Crowe Chizek Confidential Information shall at all times remain the property of Crowe Chizek, and Crowe Chizek shall have free and unlimited access at all times to all materials containing Crowe Chizek Confidential Information and shall have the right to claim and take possession of such materials on demand.

b.      Except as required to assist Crowe Chizek with the provision of the services under this Agreement, Client will not, during the term of this Agreement or thereafter, directly or indirectly use, divulge, disseminate, disclose, lecture upon, or publish any Crowe Chizek Confidential Information without having first obtained written permission from Crowe Chizek to do so.

c.      Client will safeguard and maintain secret all Crowe Chizek Confidential Information and all documents and things that include or embody Crowe Chizek Confidential Information.

d.      In order to comply with its obligations under this Section, Client shall bind and engage all of its officers, employees, agents, and the like who might reasonably be expected to assist in the provision of the services to an agreement having terms of same as or equivalent to the terms of this Section of this Agreement.

e.      Upon termination of this Agreement for whatever reason or upon request by Crowe Chizek, Client will deliver to Crowe Chizek all notes, drawings, memoranda, correspondence, documents, records, notebooks, printouts, disks, programs, electronic or magnetic storage media, and similar repositories of Crowe Chizek Confidential Information, including all copies thereof, then in Client's possession or under Client's control, whether prepared by Client or by employees or agents of Client.

f.      This obligation to safeguard and maintain secret Crowe Chizek Confidential Information shall continue for a period of one (1) year after the earlier of termination of this Agreement or completion of all works and services under all Statements of Work.

7

13.   Limited Warranties

a.   Client warrants and represents that it is free lawfully to make this Agreement.

b.   For a period of ten (10) days after the Date of Acceptance of a Deliverable as defined in Section 9 ("Warranty Period") , Crowe Chizek warrants that such Deliverable will conform to the specifications set forth in the applicable Statement of Work provided that Client notifies Crowe Chizek in writing of a nonconformity within such Warranty Period. EXCEPT AS PROVIDED IN THIS SECTION 13, CROWE CHIZEK MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, AND CROWE CHIZEK SPECIFICALLY DISCLAIMS ALL OTHER EXPRESS AND IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

c.   The Warranties provided in Section 13(b) shall not apply to any Deliverable which (1) has been modified or altered by anyone other than Crowe Chizek, (2) has been subject to misuse, negligence or accident, (3) has been operated other than in accordance with the documentation prepared and supplied by Crowe Chizek for the Deliverable, (4) has been used in combination with any product or software not specified by Crowe Chizek in the applicable Statement of Work, (5) has been used with an operating or hardware platform and/or any software application that is different than that set forth in the applicable Statement of Work.

14.   LIMITATION OF LIABILITY

a.   EXCEPT FOR CROWE CHIZEK'S OBLIGATIONS IN SECTION 15(c), CROWE CHIZEK'S LIABILITY TO CLIENT HEREUNDER FOR DAMAGES, REGARDLESS OF THE LEGAL THEORY OF THE CLAIM, SHALL NOT EXCEED ALL AMOUNTS ACTUALLY PAID TO CROWE CHIZEK UNDER THE APPLICABLE STATEMENT OF WORK FROM WHICH SUCH CLAIM AROSE, AND SUCH CLAIM FOR A RETURN OF AMOUNTS PAID SHALL BE CLIENT'S EXCLUSIVE REMEDY FOR ANY DAMAGES. CROWE CHIZEK'S OPTION TO REPAIR OR REPLACE A NONCONFORMING OR NONCOMPLIANT DELIVERABLE SHALL BE CLIENT'S EXCLUSIVE REMEDY AGAINST CROWE CHIZEK WITH RESPECT TO SUCH DELIVERABLE. FURTHER, CROWE CHIZEK SHALL NOT BE LIABLE TO CLIENT FOR LOST PROFITS OR FOR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES WHATSOEVER, EVEN IF CROWE CHIZEK KNEW ABOUT THE POSSIBILITY OF SUCH DAMAGES. CROWE CHIZEK IS EXPRESSLY NOT LIABLE FOR CLIENT'S DATA INTEGRITY OR FOR ANY DAMAGES THAT MAY OCCUR TO CLIENT'S DATA, BUSINESS, OR BUSINESS RELATIONSHIPS DUE TO MALFUNCTIONING OR UNAVAILABLE THIRD PARTY SOFTWARE OR HARDWARE.

b.   EXCEPT FOR CLIENT'S OBLIGATIONS IN SECTION 15(d), CLIENT'S LIABILITY TO CROWE CHIZEK HEREUNDER FOR DAMAGES REGARDLESS OF THE LEGAL THEORY OF THE CLAIM SHALL NOT EXCEED THE TOTAL AMOUNT CLIENT

HAS PAID AND IS OBLIGATED TO PAY TO CROWE CHIZEK UNDER THIS AGREEMENT. FURTHER, CLIENT SHALL NOT BE LIABLE TO CROWE CHIZEK FOR LOST PROFITS, OR FOR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES WHATSOEVER, EVEN IF CLIENT KNOWS ABOUT THE POSSIBILITY OF SUCH DAMAGES.

15.    Indemnity

a.    Crowe Chizek shall defend, indemnify and hold harmless Client from and against all damages to persons or property and any related costs and expenses, including court costs and reasonable attorney fees, caused solely by the negligence of Crowe Chizek and from and against all claims and liability and related costs and expenses, including court costs and reasonable attorney fees, resulting solely from a material breach of this Agreement by Crowe Chizek.

b.    Client shall defend, indemnify, and hold harmless Crowe Chizek from and against all damages to persons or property and any related costs and expenses, including court costs and reasonable attorney fees, caused solely by the negligence of Client and from and against all claims and liability and related costs and expenses, including court costs and reasonable attorney fees, resulting solely from a material breach of this Agreement by Client.

c.    Crowe Chizek shall defend, indemnify, and hold harmless Client against any claim of a third person for infringement of patents, copyrights, trade secrets or trademarks by a Deliverable created by Crowe Chizek and delivered to Client under this Agreement which has not been, either in whole or in part, developed according to specifications provided by Client: provided, however, that the foregoing undertaking of Crowe Chizek shall not apply unless Crowe Chizek has been informed as soon as practicable by Client of the charge or suit alleging such infringement and shall have been given the opportunity to take over the defense thereof. Further, the foregoing undertaking of Crowe Chizek shall not apply if the alleged infringement results from the use of the Deliverable in combination with equipment or software which was not provided by Crowe Chizek or from use of a Deliverable that has been altered or modified by someone other than Crowe Chizek after Crowe Chizek delivers such Deliverable to Client if such infringement would not have occurred from the use of the Deliverable by itself or use of the Deliverable without the alteration or modification. Except as provided in this Section 15(c), Crowe Chizek makes no warranty that any Deliverable will be free of any rightful claim of any third party of infringement. In the event of any claim of a third person for infringement by a Deliverable created by Crowe Chizek under this Agreement, Crowe Chizek may, at its own expense, and at its option either:

(1)    procure for Client the right to continue using the Deliverable; or

(2)    replace the Deliverable with a non-infringing counterpart; or

(3)    modify the Deliverable so that it is non-infringing.

9

d.       Client shall defend, indemnify, and hold harmless Crowe Chizek against any claim of a third party for infringement of patents, copyrights, trade secrets or trademarks by a Deliverable delivered to Client by Crowe Chizek under this Agreement which has been developed, either in whole or in part, to specifications which have been provided by Client or which includes alterations or modifications made by Client or which has been altered or modified by anyone other than Crowe Chizek after the Deliverable is delivered to Client.

16.      Term and Termination

a.       The term of this Agreement shall commence on the Effective Date and, unless sooner terminated as provided in this section, shall continue for an initial term of two (2) year(s) (the "Initial Term") or until Crowe Chizek has completed the development work and services it is obligated to perform under each Statement of Work that is a part of this Agreement, whichever occurs later. This Agreement shall renew for additional one (1) year terms (the "Renewal Terms") unless Client or Crowe Chizek notifies the other in writing at least thirty (30) days prior to the expiration of either the Initial Term or any of the Renewal Terms of its intention to terminate this Agreement; provided, however, that this Agreement shall not terminate until Crowe Chizek has completed the development work and services it is obligated to perform under each Statement of Work that is a part of this Agreement. In the event that Crowe Chizek completes all of the development work and services under all Statements of Work prior to the end of the Initial Term or any Renewal Term and no additional Statement of Work is agreed to by the parties prior to the end of the Initial Term or Renewal Term, then this Agreement shall automatically terminate at the end of the Initial Term or Renewal Term.

b.       If Client shall, at any time during the Initial Term or any of the Renewal Terms of this Agreement, materially breach any obligation hereunder, including fail to pay any fee due (except for withholding payment based on the rejection of a Deliverable under Section 5(d)), and such breach shall not be cured within fifteen (15) business days after written notice from Crowe Chizek to Client specifying the nature of the breach, Crowe Chizek may terminate this Agreement.

c.       If Crowe Chizek shall, at any time during the Initial Term or any of the Renewal Terms of this Agreement, materially breach any obligation hereunder, and such breach shall not be cured within fifteen (15) days after written notice from Client to Crowe Chizek specifying the nature of the breach Client may terminate this Agreement.

d.       Sections 1 and 10 through 15, inclusive, shall survive the termination of this Agreement pursuant to this Section.

e.       The exercise of either party of any right of termination shall not constitute a waiver of any other rights or remedies available to such party for violation of the terms of this Agreement or under applicable law.

17.      Nature of Relationship Between Parties

10

Nothing herein shall be construed to place the parties in a relationship of partners or joint ventures and this Agreement does not make either party the agent or legal representative of the other for any purpose whatsoever. The parties further agree that no representation shall be made by either party that would create an apparent agency, employment, partnership, or joint venture. Neither party shall have the power, expressed or implied, to obligate or find the other in any manner whatsoever. Neither party shall be responsible for any act or omission of the other or any employee of the other. No employee of Crowe Chizek is or shall be considered an employee of Client for any purpose in connection with the performance of services under this Agreement.

18.    Non-Solicitation

For the duration of this Agreement and for the period of one (1) year following termination hereof, neither party shall, directly or indirectly, recruit or attempt to recruit any employee or agent of the other party or otherwise initiate any offer or promise of employment with any employee or agent of the other party without the prior written consent of the other party. If permission is granted by the other party to the party requesting permission and an employee or agent of the other party is employed by the party requesting permission any time prior to the termination of this Agreement or the one (1) year period thereafter, then the party requesting permission shall pay a fee to the other party in the amount of one (1) times the annual salary of such employee or agent for the year in which such employee or agent is employed by the party requesting permission.

19.    Assignment of Agreement and Binding Effect

Neither party shall assign this Agreement or any of its obligations under this Agreement without the prior written consent of the other party, except to an entity that succeeds to all of its business or assets to which this Agreement relates. The rights and obligations of this Agreement shall inure to the benefit of and be binding upon the legal representative, successors and assigns of both parties.

20.    Severability

The provisions of this Agreement shall be severable and, if any provision of this Agreement shall be held or declared to be illegal, invalid, or unenforceable, such illegality, invalidity, or unenforceability shall not affect any other provision hereof, and the remainder of this Agreement, disregarding such invalid portion, shall continue in full force and effect as though such void provision had not been contained herein.

21.    Notices

Any notice provided for herein shall be sent via certified mail, return receipt requested, to the addresses first written above.

22.    Headings

11

The headings of the several sections are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

23.    Force Majeure

Neither party shall be responsible for any failure to comply with, or for any delay in performance of, the terms of this Agreement, including, but not limited to, delays in completion of the services, where such failure or delay is directly or indirectly caused by or results from events of force majeure beyond the reasonable control of such party.

24.    Insurance

Each party shall maintain in full force and effect, and upon the request of the other party, shall furnish evidence satisfactory to the other party of the following insurance coverage:

      (1)    Comprehensive general liability insurance with minimum limits of $1,000,000 per occurrence and $5,000,000 combined single limit that will cover any and all losses to the insured's property, the property of the other party to this Agreement, the property of third parties, or personal injuries caused by the insured party.

      (2)    Workers' compensation insurance in accordance with applicable.

25.    Waiver

No provision of this Agreement shall be deemed waived, unless such waiver shall be in writing and signed by the party against which the waiver is sought to be enforced. The waiver by either of the parties hereto of any breach of any provision hereof by the other party shall not be construed to be either a waiver of any succeeding breach of any such provision or a waiver of the provision itself.

26.    Entire Agreement

This Agreement contains the entire agreement between the parties with respect to the subject matter hereof and supersedes all previous written or oral understandings, agreements, negotiations, commitments, or any other writings or communications with respect to such subject matter and takes precedent over any and all terms contained in any purchase orders which may have been previously or may be subsequently issued by Client related to the subject matter of this Agreement.

27.    Modification

This Agreement may not be changed or modified in any manner except by an instrument in writing signed by each of the parties.

28.    Governing Law

This Agreement shall be in all respects interpreted and construed in accordance with and be governed by the laws of the State of Indiana.

IN WITNESS WHEREOF, Crowe Chizek and Client have executed this Agreement.

CROWE CHIZEK AND COMPANY LLC
(Crowe Chizek)

Signed: *Jonathan P. Cole*

Printed: Jonathan P-Cole

Title: Executive

Dated: 1-27-2006


DENNIS BAMBER, INC
(Client)

Signed: *Joseph A. Dittmer*

Printed: Joseph A Dittmer

Title: Chief Information Officer

Dated: Jan 24, 2005

13

**EXHIBIT A – Statements of Work**

# EXHIBIT B

## TO COMPLAINT

(Requests for Services: the "Requests" )

09/12/2006 13:14 FAX                                                    ☒001/006



**WOODWIND**

**BRASSWIND**

4004 Technology Drive
South Bend, IN 46628-9772

Tel: (574) 251-3538
Fax: (574) 251-3549

## FAX TRANSMITTAL SHEET

**FAX #:** 236-8692                          **DATE:** September 12, 2006

**TO:**    Crowe                              **FROM:** Dave Yoder
          Marty Priller

**PAGES:** 6  (including this page)

---

Marty,

**Attached is the signed Request for Services dated August 25, 2006 for additional post cutover support.**

Thanks,
Dave

09/12/2006  13:15 FAX                                    ☑ 002/008



# E-Commerce Post Cutover Support

## Request for Services

**RFS05**

**Version 1.0**
**Date: August 25, 2006**



Confidential
Copyright © Crowe, Chizek and Company LLP 2006
All Rights Reserved

09/12/2006 13:15 FAX                                                    ☑003/006

 Crowe

IMPLEMENTATION PROGRAM PLANNING PROJECT
DESCRIPTION OF SERVICES

## Description of Services

Crowe Chizek has been providing post cutover support for the DBI E-Commerce system per Request for Services (RFS) 04. This support had been budgeted at $ 94,000 on a time and materials basis.

Based on current approved workload we project this budget to be consumed by August 30, 2006. The following RFS (RFS05) will extend the post cutover support agreement an additional three weeks at a budget of $ 29,520 also to be executed on a time and materials basis. The resources assigned to this support effort will not change, however the weekly time allotment will increase slightly to meet various support and development goals.

Crowe Chizek will provide a manager level .Net / E-Commerce resource on site for the days per week and duration specified in the table below. This resource will provide architectural guidance and supplement the PMO and the E-commerce Manager with the day to day management, issue prioritization, workload delegation, and technical management for the E-Commerce System and the various integrations associated with this system. This resource will also work with the appropriate DBI resources to transfer system knowledge and technical management best practices.

Crowe Chizek will also provide a .Net developer resource to provide on site system development assistance and to work with DBI developers as a knowledge source as DBI accepts full responsibility for the management and enhancement of the new system.

Crowe Chizek will also provide a development resource for specific Endeca development assistance or other .Net assistance that this resource is qualified to provide. The time frame for this resource will be 8/28/06 through 9/8/06. DBI understands that this resource is contracted for a minimum of nine days.

The following agreement defines Crowe Chizek's understanding of this request and the associated terms and costs.

☑004/006

 **Crowe**                    IMPLEMENTATION PROGRAM PLANNING PROJECT
                                                  CONSIDERATIONS

## Considerations

o   Crowe Chizek will provide resources for the weekly allocation and duration listed in the
    table below. If needed these resources may be available past the days agreed to in the
    event of greater workload or emergencies. If more time is required the same hourly
    rates will apply, however some advance notice will be required.

o   The Crowe Chizek resources assigned to this project will function as part of the DBI E-
    Commerce team reporting to the DBI PMO and Dave Yoder.

o   DBI will be invoiced for the total of nine days of Kelly Stuard's allocated time, and it is the
    responsibility of DBI to ensure that there is sufficient workload for this resource to
    address during the timeframe allocated for this assistance.

o   DBI will notify Crowe Chizek at least two weeks prior to the end of the specified contract
    end date if they would like to extend the duration of this agreement. Extensions of time
    will be in minimum one week increments.

o   The majority of work will be performed at the DBI facility in South Bend Indiana. When
    appropriate some work may be performed at one of Crowe Chizek's offices.

o   DBI and Crowe Chizek will meet in person at the end of each month to review the status
    of this assistance and to plan for the upcoming month. These meetings will be attended
    by the appropriate DBI resources and management, Crowe Chizek's PMO resource and
    Crowe Chizek's Account Executive.

o   Prioritization of activities performed and issues to be addressed will ultimately be the
    decision of DBI. Crowe Chizek will make recommendations and provide guidance;
    however management decisions will not be made by Crowe Chizek resources.

o   A weekly summary of hours will be provided to the DBI PMO by the Crowe Chizek
    manager level resource or designee.

o   There are no defined deliverables for this assistance and the engagement completion
    will be marked by the stated contract end date or release by DBI (whichever occurs
    sooner)

09/12/2006 13:15 FAX                                                    ☎005/006

 **Crowe**

IMPLEMENTATION PROGRAM PLANNING PROJECT
ENGAGEMENT FEES AND SCHEDULE

## Engagement Fees and Schedule

Crowe Chizek is proposing the following time and materials assistance to begin on Sept 1, 2006. The exact start date may vary depending on the actual date the original post cutover support budget is consumed. The weekly allocation and engagement duration for each resource is detailed in the table below.

| Resource | Hourly Rate | Hours / Week | Duration (Weeks) | Estimated Fee Totals |
|---|---|---|---|---|
| **Aaron Scholl** | 140 | 20 | 3 | |
| **Jason Ruthkoski** | 110 | 40 | 3 | |
| **Kelly Stuard** **8/28/06 – 9/8/06** | 110 | (9 Days) | (9 Days) | |

Travel expenses will be billed to DBI at cost. Travel expenses may include lodging, mileage and per diem expenses. Travel expenses typically range between 8 to 10% of project service fees. Crowe Chizek will not invoice DBI for travel time (hourly rate of our consultants). Crowe Chizek will invoice DBI Bi-Monthly and payment terms will be net 30 days.

We have submitted this estimate to DBI based upon our current understanding of the scope of this assistance. If it were mutually decided that the scope of the project and our involvement should change, we would discuss with you any resulting change in our fees, prepare for you a revised estimate, and require written authorization to proceed.

This proposal will remain in effect for a period of 5 days from the date of this document. After 5 days, it may be necessary to provide a new estimate based on potential changes in staffing.

09/12/2006 13:16 FAX                                              🖾 006/006

 **Crowe**

IMPLEMENTATION PROGRAM PLANNING PROJECT
AUTHORIZATION TO PROCEED

## Authorization to Proceed

If the terms and objectives set forth in this document are acceptable, please authorize us to proceed by returning one copy of this document signed by the appropriate official of DBI.

DBI
(Customer)

_David B. Yoder_
Signed

_David G. Yoder_
Printed

_CFO_
Title

_8/29/06_
Date

1



**WOODWIND**

**BRASSWIND**

4004 Technology Drive
South Bend  IN  46628

Phone:  574 251 3500
 Fax::  574 251 3501

# FAX MESSAGE

| | |
|---|---|
| **ATTN:** | Martin Priller |
| **FROM:** | Jeff Roberson |
| **FAX#** | 236-8692 |
| **DATE:** | 9-18-2006 |

**# OF PAGES:** 6

09/19/2006 11:03 FAX                                                          ☑002/006



# E-Commerce Post Cutover Support

## Request for Services

RFS06

**Version 1.0**
**Date: September 15, 2006**



Confidential
Copyright © Crowe, Chizek and Company LLP 2006
All Rights Reserved

☑ 003/006

 **Crowe**                                    E-COMMERCE POST CUTOVER SUPPORT
                                                                  DESCRIPTION OF SERVICES

## Description of Services

Crowe Chizek will provide two .Net developer resources to provide on site system development assistance and to work with DBI developers as knowledge source as DBI accepts full responsibility for the management and enhancement of the new system.

The time frame for these resources will be 9/18/2006 through 11/17/2006

The following agreement defines Crowe Chizek's understanding of this request and the associated terms and costs.

08/18/2006 11:04 FAX                                                    ☒004/006

 **Crowe**

## Considerations

o   Crowe Chizek will provide resources for the weekly allocation and duration listed in the table below. If needed these resources may be available past the days agreed to in the event of greater workload or emergencies. If more time is required the same hourly rates will apply, however some advance notice will be required.

o   The Crowe Chizek resources assigned to this project will function as part of the DBI E-Commerce team reporting to the DBI CIO.

o   DBI will notify Crowe Chizek at least two weeks prior to the end of the specified contract end date if they would like to extend the duration of this agreement. Extensions of time will be in minimum one week increments.

o   The majority of work will be performed at the DBI facility in South Bend Indiana. When appropriate some work may be performed at one of Crowe Chizek's offices.

o   DBI and Crowe Chizek will meet in person at the end of each month to review the status of this assistance and to plan for the upcoming month. These meetings will be attended by the appropriate DBI resources and management, Crowe Chizek's PMO resource and Crowe Chizek's Account Executive.

o   Prioritization of activities performed and issues to be addressed will ultimately be the decision of DBI. Crowe Chizek will make recommendations and provide guidance; however management decisions will not be made by Crowe Chizek resources.

o   A weekly summary of hours will be provided to the DBI PMO by the Crowe Chizek manager level resource or designee.

o   There are no defined deliverables for this assistance and the engagement completion will be marked by the stated contract end date or release by DBI (whichever occurs sooner)

 **Crowe**

## Engagement Fees and Schedule

Crowe Chizek is proposing the following time and materials assistance to begin on Sept 19, 2006. The weekly allocation and engagement duration for each resource is detailed in the table below.

| Resource | Hourly Rate | Hours / Week | Duration (Weeks) | Estimated Fee Totals |
|---|---|---|---|---|
| Jason Ruthkoski | 110 | 40 | 8 | $ 35,200 |
| Kelly Stuard | 110 | 40 | 8 | $ 35,200 |

Travel expenses will be billed to DBI at cost. Travel expenses may include lodging, mileage and per diem expenses. Travel expenses typically range between 6 to 10% of project service fees. Crowe Chizek will not invoice DBI for travel time (hourly rate of our consultants). Crowe Chizek will invoice DBI Bi-Monthly and payment terms will be net 30 days.

We have submitted this estimate to DBI based upon our current understanding of the scope of this assistance. If it were mutually decided that the scope of the project and our involvement should change, we would discuss with you any resulting change in our fees, prepare for you a revised estimate, and require written authorization to proceed.

This proposal will remain in effect for a period of 5 days from the date of this document. After 5 days, it may be necessary to provide a new estimate based on potential changes in staffing.

 **Crowe**

E-COMMERCE POST CUTOVER SUPPORT
AUTHORIZATION TO PROCEED

### Authorization to Proceed

If the terms and objectives set forth in this document are acceptable, please authorize us to proceed by returning one copy of this document signed by the appropriate official of DBI.

DBI
(Customer)

_David Yoder_
Signed

_DAVID YODER_
Printed

_CFO_
Title

_9/19/06_
Date

11/03/06 17:08 FAX 574 251 3537 @001



**WOODWIND**
**BRASSWIND**

4004 Technology Drive
South Bend IN 46628

Phone: 574 251 3500
Fax:: 574 251 3501

# FAX MESSAGE

| | |
|---|---|
| **ATTN:** Marty Priller | |
| **FROM:** Jeff Roberson | |
| **FAX#** 574-236-8692 | |
| **DATE:** 11-3-2006 | **# OF PAGES:** 6 |

11/03/06  17:08 FAX 574 251 3537            @002



# E-Commerce Post Cutover Support

## Request for Services

RFS07

**Version 1.0**
**Date: October 30, 2006**



Confidential
Copyright © Crowe, Chizek and Company LLP 2006
All Rights Reserved

11/03/06   17:08 FAX 574 251 3637                                                    ☒ 003

 **Crowe**

## Description of Services

Crowe Chizek will provide two .Net developer resources to provide on site system development assistance and to work with DBI developers as knowledge source as DBI accepts full responsibility for the management and enhancement of the new system.

The following agreement defines Crowe Chizek's understanding of this request and the associated terms and costs.

11/03/06  17:09 FAX 574 251 3537                                    ☑004


Crowe

E-COMMERCE POST CUTOVER SUPPORT
CONSIDERATIONS

## Considerations

o   Crowe Chizek will provide resources for the weekly allocation and duration listed in the
    table below. If needed these resources may be available past the days agreed to in the
    event of greater workload or emergencies. If more time is required the same hourly
    rates will apply, however some advance notice will be required.

o   The Crowe Chizek resources assigned to this project will function as part of the DBI E-
    Commerce team reporting to the DBI CIO.

o   DBI will notify Crowe Chizek at least two weeks prior to the end of the specified contract
    end date if they would like to extend the duration of this agreement. Extensions of time
    will be in minimum one week increments.

o   The majority of work will be performed at the DBI facility in South Bend Indiana. When
    appropriate some work may be performed at one of Crowe Chizek's offices.

o   DBI and Crowe Chizek will meet in person at the end of each month to review the status
    of this assistance and to plan for the upcoming month. These meetings will be attended
    by the appropriate DBI resources and management, Crowe Chizek's PMO resource and
    Crowe Chizek's Account Executive.

o   Prioritization of activities performed and issues to be addressed will ultimately be the
    decision of DBI. Crowe Chizek will make recommendations and provide guidance;
    however management decisions will not be made by Crowe Chizek resources.

o   A weekly summary of hours will be provided to the DBI PMO by the Crowe Chizek
    manager level resource or designee.

o   There are no defined deliverables for this assistance and the engagement completion
    will be marked by the stated contract end date or release by DBI (whichever occurs
    sooner)

11/03/06  17:09 FAX 574 251 3537                                    ☑005

 **Crowe**

## Engagement Fees and Schedule

Crowe Chizek is proposing the following time and materials assistance to begin on November 20, 2006. The weekly allocation and engagement duration for each resource is detailed in the table below.

| Resource | Hourly Rate | Hours / Week | Duration (Weeks) | Estimated Fee Totals |
|---|---|---|---|---|
| **Kelly Stuard**<br>*11/20/06 - 12/01/06* | 110 | 40 | 2 | |
| **Jason Ruthkoski**<br>*11/20/06 – 12/28/06* | 110 | 40 | 8 | |

Travel expenses will be billed to DBI at cost. Travel expenses may include lodging, mileage and per diem expenses. Travel expenses typically range between 8 to 10% of project service fees. Crowe Chizek will not invoice DBI for travel time (hourly rate of our consultants). Crowe Chizek will invoice DBI Bi-Monthly and payment terms will be net 30 days.

We have submitted this estimate to DBI based upon our current understanding of the scope of this assistance. If it were mutually decided that the scope of the project and our involvement should change, we would discuss with you any resulting change in our fees, prepare for you a revised estimate, and require written authorization to proceed.

This proposal will remain in effect for a period of 5 days from the date of this document. After 5 days, it may be necessary to provide a new estimate based on potential changes in staffing.

11/03/06  17:09 FAX 574 251 3537                                    ☒006

 Crowe

E-COMMERCE POST CUTOVER SUPPORT
AUTHORIZATION TO PROCEED

**Authorization to Proceed**

If the terms and objectives set forth in this document are acceptable, please authorize us to proceed by returning one copy of this document signed by the appropriate official of DBI.

DBI
(Customer)

_Signed_

_Jeff Roberson_
Printed

_CIO_
Title

_11-3-2006_
Date