# **EXHIBIT F**

(Order and Asset Purchase Agreement)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| DENNIS BAMBER, INC. | ) | Case No. 06-31800 |
| d/b/a THE WOODWIND & THE | ) | |
| BRASSWIND, | ) | Honorable Harry A. Dees, Jr. |
| | ) | |
| Debtor. | ) | |

**ORDER CONFIRMING SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS AND AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND RELATED RELIEF**

At South Bend, in said District, this 30th day of January, 2007.

**THIS CAUSE** coming on to be heard upon the Motion of DENNIS BAMBER, INC. d/b/a THE WOODWIND & THE BRASSWIND, an Indiana corporation, debtor and debtor in possession herein (**"Debtor"**) for the entry of Orders: (1) Approving the Sale Process, Bidding Procedures, Bid Protection, Break-up Fee and Form Of Asset Purchase Agreement for the Sale of Substantially All of the Assets of the Estate; (2) Scheduling a Public Auction And Authorizing the Sale of the Assets of the Debtor Free and Clear of Liens, Claims, Encumbrances and Interests; And (3) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases (**"Sale Motion"**), pursuant to Sections 363 and 365 of the Bankruptcy Code[1]; due written notice hereof having been given to all parties listed on the Official Service List herein, and all creditors and other interested parties in this case, as evidenced by those certain Certificates of Service dated November 22, 2006, and January 4, 5, 12 and 23, 2007 filed herein

---

[1]Capitalized terms not defined herein shall have the same meaning provided in the Sale Motion.

74068.1

1

EXHIBIT

F

c:\My Documents

by Debtor's counsel; the highest and best offer for the "Transferred Assets", as defined below, having been submitted by Musician's Friend, Inc., or its permitted assignee(s) (collectively, "**MFI**"), pursuant to that certain Asset Purchase Agreement dated as of January 30, 2007 ("**MFI Sale Agreement**"), a copy of which is attached as Exhibit A hereto and made a part hereof; no parties having been heard to object to the entry hereof; the Court having reviewed and considered (i) the Sale Motion, (ii) any objections thereto, (iii) the evidence proffered or adduced at the hearing held on January 30, 2007 before this Court on the Sale Motion ("**Sale Hearing**"), including the offer of proof of Debtor's counsel and supporting testimony of David G. Yoder, Vice President and Chief Financial Officer of the Debtor, Vito Mitria, representative of Fort Dearborn Advisors, Inc., the Debtor's investment bankers, and Lee Smith, a representative of MFI; and (iv) the statements of counsel and other interested parties present at the Sale Hearing, and being otherwise fully advised in the premises;

       **NOW, THEREFORE, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT:**

       1.     On November 21, 2006, the Debtor commenced this case by the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code ("**Case**"), and from and after said date has been operating its business and managing its property under the jurisdiction of this Court as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

       2.     Pursuant to the applicable provisions of the Bankruptcy Code, an Official Committee of Unsecured Creditors has been appointed in this Case ("**Committee**"). No trustee has been appointed in this Case.

       3.     The Debtor is one of the nation's largest retailers of musical instruments and

74068.1

2

accessories having retail, mail order and web-based sales (the **"Business"**), and operating from its leased 120,000 square foot corporate headquarters, retail center and warehouse facilities at 4004 Technology Drive, South Bend, Indiana, and nearby 224,000 square foot distribution center (4955 Ameritech Drive, South Bend, IN) (collectively, the **"South Bend Facilities"**).

4.      For the reasons more fully described in the Sale Motion, beginning in late September 2006, the Debtor commenced its marketing efforts for the sale of substantially all of its business and assets to Guitar Center, Inc. (**"GCI"**). GCI, a publically held corporation (NASDAQ: GTRC) is the Debtor's primary competitor and the largest retailer of musical instruments and accessories in the world. Until early November 2006, the Debtor and GCI attempted to negotiate the terms of a mutually acceptable letter of intent. MFI is an affiliate of GCI..

5.      However, prior to the execution of the GCI letter of intent, the Debtor was also engaged in efforts to obtain a competing proposal to acquire the stock, business or assets of the Debtor through a third party venture capital fund based in Philadelphia, Pennsylvania.

6.      Throughout most of October 2006 and leading up to the commencement of this Case, the Debtor continued to negotiate the terms and conditions of an asset acquisition with GCI, while at the same time providing information and due diligence access to its books, records and facilities for the third party venture capital firm, and conducted extensive sale and investment negotiations with various representatives of that venture capital firm.

7.      These asset sales negotiations with GCI culminated in the execution of a letter of intent between the parties dated November 3, 2006. Immediately thereafter, the Debtor and GCI/MFI began to negotiate the terms of a proposed asset purchase agreement based on the terms

74068.1                                      3

c:\My Documents

and conditions of the executed letter of intent. Both parties expended substantial efforts and costs in formulating the terms of a proposed asset purchase agreement.

8.    Given the status of these various negotiations, and as a result of the cash flow issues and operating pressures faced by the Debtor, the Debtor commenced this Case in order to protect the claims and interests of its customers, creditors, employees and other interested parties.

9.    In analyzing the ramifications of filing this Case, and alternatives thereto, the Debtor has extensively considered the primary means of successfully concluding this Case in the best interests of all parties, such alternatives being a sale of the assets as a going concern, or the formulation and confirmation of an internal plan of reorganization.

10.    As more fully described in the Sale Motion, since the filing of this Case, the Debtor has been unable to obtain sufficient sources of working capital from its primary secured lender, LaSalle Bank National Association ("**LaSalle**"), or otherwise to permit an internal plan of reorganization to be filed and confirmed. Without such capital, and given the competition in the Debtor's industry, the Debtor is faced with the likely erosion of its valuable customer base and the almost certain deterioration of the going concern value of the Business and the Transferred Assets. After evaluating various strategic alternatives, the Debtor has concluded that the best mechanism for maximizing the value of the Business and the Sale Property on a going concern basis is through the sale pursuant to Section 363 of the Bankruptcy Code, and that under the circumstances, any significant delay in embarking upon a sale process would likely have a material adverse effect on the value of the assets being offered for sale, given what will be the ongoing administrative costs of the Case, a continuing decline in sales volumes due to the inability to maintain optimal inventory levels, and the resulting limitations on the cash flow

74068.1                                      4

needed to continue operations.

11.    In order to expedite and maximize its assets sales efforts for the benefit of all of the creditors and other interested parties in this Case, immediately after the commencement of this Case, the Debtor conditionally accepted an Asset Purchase Agreement dated November 22, 2006 submitted by MFI for the purchase of substantially all of the Debtor's assets (**"MFI Initial Offer"**), and filed the Sale Motion, which was initially heard by this Court on November 28, 2006 and continued to December 8, 15 and 21, 2006.

12.    On December 1, 2006, the Debtor received a competing proposal from Steinway Musical Instruments, Inc., a Delaware corporation (**"SMI"**) in the form of an Asset Purchase Agreement largely based on the MFI Initial Offer, but which purported to offer a higher purchase price (the **"SMI Initial Offer"**).

13.    After extensive discussions and negotiations between the Debtor, the Committee, MFI and SMI, it was determined that based on certain modifications made by SMI, the SMI Initial Offer was, on its face, a higher and better offer than the MFI Initial Offer which had been proposed under the Sale Motion prior to the Debtor's receipt of the SMI Initial Offer.

14.    As a result, and following further hearings before this Court, on December 21, 2006, this Court entered that certain Order: (A) Approving the Sale Process, Bidding Procedures, Bid Protection, Break-up Fee and Form of Asset Purchase Agreement for the Sale of Substantially All of the Assets of the Estate; (B) Scheduling a Public Auction and Authorizing the Sale of the Assets of the Debtor Free and Clear of Liens, Claims, Encumbrances and Interests; and (C) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases (**"Bidding Procedures Order"**).

74068.1                                    5

c:\My Documents

15.    As set forth in the Bidding Procedures Order, the SMI Initial Offer, as amended in open court and thereafter by the filing of an Addendum thereto (collectively, the **"SMI Offer"**) was afforded the "stalking horse" status thereunder for purposes of the Auction and all of the Debtor's further marketing efforts, which included the possible payment of a $1,000,000 break-up fee (defined therein as the **"Termination Fee"**), in the event that a higher and better offer for the Transferred Assets was received from another bidder, ultimately approved by this Court and thereafter closed. Pursuant to the SMI Offer, SMI has made an earnest money deposit which, as of the date hereof, is being held in a LaSalle escrow in the amount of $2,000,000 (**"SMI Deposit"**).

16.    In addition, and among other things, the Bidding Procedures Order established the dates for: (a) the **"Initial Bid Deadline"** for all competing bids of January 22, 2007 by 4:00 p.m. (EST); (b) the **"Auction"** for January 24, 2007 at 10:00 a.m. (EST); and (c) the Sale Hearing, which was initially set for January 25, 2007.

17.    Among the assets of the estate which the Debtor seeks to sell in bulk pursuant to the Sale Motion, are the Debtor's right, title and interest in and to the Transferred Assets, all of which are used in the operation of the Debtor's Business, and are considered part of and necessary for the continued conduct of the Business. As more fully described in the Sale Agreement, the Transferred Assets include all of the Debtor's right, title and interest, in and to various executory contracts and unexpired leases relating to the Business, including, without limitation, the leases for the South Bend Facilities and that certain Master Lease Agreement between the Debtor and LaSalle National Leasing Corporation (**"LaSalle Leasing"**) dated June 27, 2005 (**"LaSalle Lease"**).

74068.1

6

c:\My Documents

18.    On December 21, 2006, this Court entered that certain Final Order (1) Authorizing Debtor to Incur Post-Petition Secured Indebtedness and Use Cash Collateral, (2) Granting Security Interests and Priority Claims, (3) Granting Adequate Protection, and (4) Modifying Automatic Stay (the "**Final Financing Order**"), which, among other things, authorized the Debtor to obtain loans and use the cash collateral of LaSalle in the ordinary course of business upon the terms and conditions set forth therein. For purposes hereof, all amounts owing to LaSalle and LaSalle Leasing pursuant to the Final Financing Order, LaSalle Lease or otherwise shall hereinafter be collectively referred to as the "**LaSalle Indebtedness**".

19.    Subject to the terms and conditions of the Final Financing Order, the Debtor will need to borrow some additional funds from LaSalle under the terms of the Final Financing Order between the date hereof and the "Closing", as defined below.

20.    As set forth in the Bidding Procedures Order, the Debtor sent the "Assumption Notice", as defined therein, to all non-debtor parties to executory contracts and unexpired leases which the Debtor believed the purchaser of the Transferred Assets might want the Debtor to assume and assign to the purchaser upon Closing (collectively, the "**Executory Contracts**"). The Assumption Notice identified SMI as the prospective purchaser and the amount of arrearage owing under such Executory Contracts as of the filing of this Case.

21.    In order to expedite and maximize its assets sales efforts for the benefit of all of the creditors and other interested parties in this Case, prior to the filing of this Case and continuing thereafter, the Debtor's investment bankers, Fort Dearborn Advisors, LLC ("**Fort Dearborn**") began a marketing effort with the assistance of the Debtor's employees and other representatives.

74068.1

7

c:\My Documents

22.  Fort Dearborn's marketing approach has included the following:

(a)  Preparation of a confidential information memorandum, executive summary, management presentation and a supplemental due diligence package using information acquired from the Debtor's senior management, the Debtor's current and historical financial statements, investigation of the Debtor's operations, and review of the industry in which the Debtor operates;

(b)  Identification of prospective purchaser list from numerous sources:

(i)  Strategic purchasers identified through the industry trade association, trade publications such as "Music Trade", database and internet searches, and referrals from industry members. A list of fifty three (53) companies in the revenue size range of $100 million to $300 billion was compiled and each was contacted by telephone or email.

(ii)  Financial Buyers were identified through database searches, review of industry trade associations, magazines and related articles, contacts of Fort Dearborn, LaSalle and other investment firms with a profile for investment that matched the Debtor's offering. All of these firms were contacted by telephone or email.

(iii)  The members of the Committee were surveyed as to their interest in submitting an offer for the Transferred Assets in light of their extensive experience and involvement in the Debtor's industry.

(c)  Utilizing the lists created, prospective purchasers were contacted by telephone or email. Executive summaries were sent by email or facsimile in the event prospective purchasers were unavailable by telephone. Telephone follow-up was also used to confirm interest or lack thereof from each recipient thereof.

(d)  Of the strategic buyers contacted, ten (10) signed confidentiality agreements and were sent a copy of the confidential information memorandum. Additionally each was contacted by telephone again and additional questions were answered. Several were sent copies of court filings in this case (i.e. bid procedures, the SMI Offer) and the supplemental due diligence package.

(e)  Of the private equity investment firms contacted, nineteen (19) signed confidentiality agreements and were sent a copy of the confidential information memorandum. Each of these firms was contacted by telephone and additional questions were answered. Several were sent copies of certain court filings in this case and the supplemental due diligence package.

(f)  Fort Dearborn and the Debtor's officers conducted numerous facility tours and onsite meetings with interested parties. Where requested, the Debtor's

president and chief operating officer had further meetings with prospective purchasers to assist them in determining his future role with the purchaser, if any.

(g) Fort Dearborn continued to follow up with all parties who signed confidentiality agreements in an effort to further their interest and participation in the sale process (all confidentiality agreements referenced herein are collectively referred to as the **"Confidentiality Agreements"**, and the Debtor's right, title and interest therein shall be considered part of the Transferred Assets).

(h) The Debtor and its representatives continued to contact other prospective purchasers as leads were obtained.

(i) The Debtor and Fort Dearborn continued to respond to all due diligence inquiries and informational requests submitted by SMI throughout the marketing period.

23.    In addition, the Debtor caused notices of the Auction and Sale Hearing to be placed in the National Edition of the *Wall Street Journal* on January 5, 10 and 13, 2007.

24.    Notice of the Auction and the Sale Hearing, in the form of, *inter alia*: (a) a copy of the Bidding Procedures Order; (b) Notice of Sale and Approved Bidding Procedures; and/or (c) the Assumption Notice (collectively, the **"Notice"**) were served by the Debtor's counsel upon the Office of the U.S. Trustee, all counsel of record, all known lien holders (collectively, the **"Secured Claimants"**)[2], all other creditors in this case, all known prospective purchasers, and all known non-debtor parties to executory contracts and unexpired leases on December 27, 2006, and January 5, 9, 11, 12 and 22, 2007.   The publications, Notice and mailings by the Debtor's counsel, and Fort Dearborn's other marketing efforts for the Transferred Assets constitute a commercially reasonable sales effort and satisfies the requirements of Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

---

[2] Except as otherwise provided in the Final Financing Order, nothing herein contained shall constitute an admission by the Debtor of the validity, nature, priority or amount of any liens or claims referenced herein. The Debtor expressly reserves all of its available rights and remedies in connection therewith.

74068.1                                            9

*SMI Termination*

25.     From and after the entry of the Bidding Procedures Order, and despite all of the

Debtor's and Fort Dearborn's efforts to assist SMI in its preparation for the Auction and Sale

Hearing, at approximately 8:00 p.m. (EST) on January 15, 2007, SMI delivered a letter from its

counsel to the Debtor's counsel notifying the Debtor that SMI was terminating the SMI Offer on

the basis of an alleged "Material Adverse Effect" (as defined in the SMI Offer), which SMI

unilaterally concluded could not be cured (**"SMI Termination"**). At no time prior to the receipt

of the SMI Termination had SMI ever discussed a possible termination of the SMI Offer with the

Debtor or Fort Dearborn, or their representatives, or whether any such termination would be valid

under the terms of the SMI Offer or even if appropriate could be cured by the Debtor. On January

16, 2007, SMI issued a press release claiming that it had "concluded that there will be a failure of

certain conditions necessary to close the transaction. Therefore, Steinway [SMI] is exercising its

right to terminate the agreement. The timing and effect of this termination is subject to approval

by the court."

26.     The Debtor and the Committee contend that the Debtor was not in material breach

of any provision of the SMI Offer, and that as such, the SMI Termination is wrongful and serves

as a material breach of the SMI Offer by SMI. Accordingly, the Debtor and the Committee

believe that SMI has forfeited the SMI Deposit, may be subject to further claims for damages

sustained by the Debtor's estate, and is no longer entitled to receive the Termination Fee

regardless of the outcome of the Sale Hearing.

27.     As a result of the SMI Termination, this Court entered an Order on January 19,

2007 continuing the Sale Hearing to the date hereof.

74068.1                                    10

*Cancellation of Auction and Receipt of MFI Sale Agreement*

28.    Subsequent to the SMI Termination and the expiration of the Initial Bid Deadline, MFI submitted a written offer to purchase the Transferred Assets to the Debtor on January 23, 2007, which the Debtor and the Committee immediately began to analyze (**"MFI Offer"**).

29.    As of the Initial Bid Deadline, and despite the marketing efforts of the Debtor and Fort Dearborn, no parties had submitted any Qualifying Bid or any other offers to purchase the Transferred Assets.

30.    Given the SMI Termination, the lack of any Qualifying Bid by the Initial Bid Deadline, and the terms of the Bidding Procedures Order, on January 24, 2007 at the time scheduled for the Auction, the Debtor announced on the record to all parties attending same (representatives of the Committee, MFI, SMI, and the U. S. Trustee, among others) that it: (a) would be unable conduct the Auction; (b) had received the MFI Offer subsequent to the expiration of the Initial Bid Deadline, which it and the Committee were continuing to review; and (c) intended to offer the Transferred Assets for sale to the party submitting the highest and best bid on or before the Sale Hearing. Other than MFI, no parties attending the Auction submitted any offer to purchase the Transferred Assets.

31.    Immediately following the Auction, and continuing through January 26, 2007, the Debtor, Committee and MFI engaged in arms' length and arduous negotiations concerning the MFI Offer, all of which culminated in the MFI Sale Agreement, attached as Exhibit A hereto, which proposes to purchase the Transferred Assets for the aggregate sum of approximately $29,900,000, including the assumption of certain specified liabilities and subject to final adjustments at Closing (collectively, the **"Purchase Price"**).

74068.1

32.    As of the date hereof, no other party has submitted any offer to purchase the

Transferred Assets. As such, and in light of the above, the MFI Sale Agreement represents the

highest and best offer to purchase the Transferred Assets and is a fair and reasonable offer. The

MFI Sale Agreement is supported by the Debtor, LaSalle and the Committee. In light of the SMI

Termination, the required overbid protection set forth in the Bidding Procedures Order is no

longer applicable.

33.    No parties were heard to object at the Sale Hearing to the sale of the Transferred

Assets pursuant to the Sale Motion or the Debtor's acceptance of the MFI Sale Agreement, and

assumption and assignment of the "Assumed Executory Contracts", as defined below.

34.    The MFI Sale Agreement provides that the Transferred Assets are being

purchased "as is where is" with no express or implied representations, statements, conditions or

warranties of any kind or nature whatsoever excluding only title thereto free and clear of all liens

and security interests except those set forth in the MFI Sale Agreement, and those other

customary representations and warranties set forth in the MFI Sale Agreement.

35.    There are no financing, due diligence or other contingencies to the closing of the

MFI Sale Agreement except as are expressly set forth therein.

36.    MFI has completed and/or waived all of its due diligence efforts regarding the

Debtor's Business and the Transferred Assets as of the entry hereof.

37.    MFI has required the Debtor to assume and assign to MFI at Closing those certain

executory contracts and unexpired leases between the Debtor and various other parties, all as

more fully set forth on the list attached hereto as Exhibit B and made a part hereof (collectively,

the "Assumed Executory Contracts"). The Debtor has further agreed to cause all cure costs in

the amounts reflected therein (collectively, the **"Cure Costs"**) to be paid at Closing or as soon thereafter as is practicable as set forth in the MFI Sale Agreement.

38.     Based on public filings with the U. S. Securities and Exchange Commission, MFI has substantial financial ability to perform under all of the Assumed Executory Contracts and consummate the transactions contemplated in the MFI Sale Agreement. In light thereof, the Debtor and the Committee have concluded that MFI has the financial ability to consummate the transactions contemplated in the MFI Sale Agreement, and provide such adequate assurance of future performance under each of the Assumed Executory Contracts as is necessary for the Debtor to assume same at the Closing in accordance with Section 356(b)(1) of the Bankruptcy Code.

39.     No sales or brokerage commissions have been incurred or will become due upon the Closing of the MFI Sale Agreement, except as has been previously authorized by order of this Court relating to the Debtor's retention agreement with Fort Dearborn.

40.     Under the terms of the MFI Sale Agreement and as affirmed in open court, MFI has agreed to the terms and conditions of the sale as set forth in the MFI Sale Agreement and has agreed to make the necessary payments and deliveries required hereunder at the Closing which is scheduled to occur on or before February 15, 2007 (**"Closing"**).

41.     The representatives of the Debtor and MFI have made all necessary disclosures of the material terms and conditions of all anticipated employment, consulting and/or lease agreements between MFI and the Debtor's President, Mr. Dennis Bamber, and the Debtor's Vice President/Chief Financial Officer, Mr. Yoder. Such prospective arrangements have enhanced MFI's willingness to enter into the MFI Sale Agreement, and served to increase the

74068.1                                            13

c:\My Documents

Purchase Price. In addition, all other prospective purchasers who inquired were also advised of the willingness of Messrs. Bamber and Yoder to entertain necessary agreements to facilitate the bidding should such party have been the successful bidder at the Auction, so that such issues did not adversely affect, but rather enhanced any prospective purchaser's interest in acquiring the Transferred Assets.

42.    Based upon the record in this case as well as the testimony adduced in open court and statements of other parties present, and the lack of any challenge to MFI's good faith, MFI is a good faith, bona fide purchaser for the Transferred Assets, and the Purchase Price approved herein was not controlled by any agreement among the potential or actual bidders at the Auction or otherwise.

43.    The Debtor, MFI, LaSalle and the Committee have each acted in good faith and have made all appropriate disclosures.

44.    For the reasons stated in open court and herein, the relief requested in the Sale Motion, as modified herein, and authorization of the sale of the Transferred Assets, including but not limited to the Debtor's execution and performance of the MFI Sale Agreement, and the assumption and assignment of the Assumed Executory Contracts, is in the best interests of the Debtor, its estate, creditors, and other parties in interest, and based on the Sale Motion, the statements of counsel, the record of the Sale Hearing and in this Case complies with the sales procedures authorized by the Court herein and required by law.

45.    In light of the SMI Termination, no Termination Fee shall be payable to SMI under the Bidding Procedures Order, the SMI Offer or otherwise.

46.    The SMI Deposit shall be held pending further order of this Court.

74068.1

14

c:\My Documents

**NOW, THEREFORE, THE COURT MAKES THE FOLLOWING CONCLUSIONS OF LAW:**

A.    This Court has jurisdiction over the subject matter of this Order pursuant to 28 U.S.C. §§1344(b) and (c), and applicable local rules regarding the referral to this Court of cases under title 11 of the United States Code.

B.    The entry of this Order and all proceedings relating thereto collectively constitute a "core proceeding" pursuant to, without limitation, 28 U.S.C. §§ 157(b)(2)(A), (M), (N) and (O).

C.    The Transferred Assets are property of the Debtor's estate.  See 28 U.S.C. § 1334(e); 11 U.S.C. § 541(a).

D.    All interested parties (including, the U. S. Trustee, the Committee, MFI, SMI, all Secured Claimants, all known creditors of the Debtor and all parties requesting notice in this Case) had adequate notice of the Sale Motion, Bidding Procedures, assumption of Executory Contracts, Auction, and Sale Hearing were given an adequate and reasonable opportunity to make competing bids at the Auction and thereafter, and/or objections to the relief sought herein, or otherwise appear and be heard on the date hereof, and have submitted to the jurisdiction of this Court and are bound by this Order.

E.    The Debtor: (i) has full corporate power and authority to execute the MFI Sale Agreement and all other documents contemplated thereby, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the MFI Sale Agreement, (iii) has taken all corporate action necessary to authorize and approve the MFI Sale Agreement and the consummation by such Debtor of the transactions contemplated thereby.

74068.1

15

c:\My Documents

F.      As demonstrated by (i) the evidence proffered or adduced at the Sale Hearing, and

(ii) the representations of counsel made on the record at the Sale Hearing and previous hearings

on the Sale Motion, the Debtor has adequately marketed the Transferred Assets and conducted

the sale process in substantial compliance with the Bidding Procedures Order.

G.      Acceptance of the MFI Sale Agreement is in the best interests of this estate and

the Debtor has demonstrated sound business justifications for the entry hereof pursuant to 11

U.S.C. § 363(b) prior to, and outside the context of, a plan of reorganization in that, among other

things, its Transferred Assets are deteriorating in value, the Debtor is unable to fund a

restructuring of its operations and there is an immediate need for the sale of the Transferred

Assets to avoid irreparable diminution of the assets in this estate.

H.      The consideration to be provided by MFI for the Transferred Assets pursuant to

MFI Sale Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the

Transferred Assets, (iii) will provide a greater recovery for the Debtor's creditors and other

interested parties than would be provided by any other practical available alternative, and (iv)

constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and

under the laws of the United States and the State of Indiana.

I.       The Notice of the Sale Motion, Bidding Procedures, assumption of Executory

Contracts, Auction, and Sale Hearing was fair, adequate, timely and sufficient under the

circumstances and complied with 11 U.S.C. §§ 102(1), 105(a), 363, and 365, and Rules 2002,

6004 and 6006 of the Federal Rules of Bankruptcy Procedure. No other or further notice of the

Sale Motion, the Bidding Procedures, the Auction, Sale Hearing, or the assumption and

assignment of the Assumed Executory Contracts is or shall be required, except as expressly

provided herein.

J.     The sale of the Transferred Assets pursuant to the MFI Sale Agreement will constitute a legal, valid, and effective transfer of the Transferred Assets, and shall be free and clear of any and all liens, claims, interests, liabilities and encumbrances whatsoever to the fullest extent permitted by Section 363(b) of the Bankruptcy Code with respect to the operation of the Business and/or the Transferred Assets prior to the date of the Closing whether arising under any employment, pension, environmental, advertising, or other similar laws or successor liability claims or interests or otherwise (collectively, **"Interests"**), including, without limitation: (i) all "liens" (as defined in Section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial or otherwise); (ii) all "claims" (as defined in Section 101(5) of the Bankruptcy Code); (iii) all encumbrances of any kind in favor of the Secured Claimants or any other known creditors of the Debtor; and (iv) those Interests (1) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's or interest in the Transferred Assets, or any similar rights, and (2) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtor's Business prior to the consummation of Closing. Any and all valid Interests shall attach to the proceeds of sale pursuant to Section 363(f) of the Bankruptcy Code, with the same validity and priority that existed immediately prior to the Closing.

K.     The Debtor may sell the Transferred Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f) has been satisfied. Those holders of Interests who did not object to the Sale Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2). Those holders of Interests who did object fall within one or more of the other subsections of 11 U.S.C. § 363(f) and are adequately protected by having their Interests, if any, attach to the proceeds generated

under the MFI Sale Agreement from the Transferred Assets against or in which they claim or may claim an Interest, with the same validity and priority that existed immediately prior to the Closing; provided, however, that certain proceeds shall be disbursed in accordance with the terms and conditions hereof.

L.    The Debtor shall be entitled, but not directed, to assume all of the Assumed Executory Contracts identified herein in accordance with the terms of Section 365(b)(1) of the Bankruptcy Code, and assign all of the Debtor's right, title and interest in and to the Assumed Executory Contracts to MFI at the Closing free and clear of any and all liens, claims, interests, liabilities and encumbrances to the fullest extent permitted by Section 363(b) of the Bankruptcy Code, subject to: (i) MFI identifying in writing to the Debtor prior to the Closing which of the Assumed Executory Contracts it has finally determined to have assumed and assigned to MFI pursuant to the Closing of the MFI Sale Agreement, and (ii) the Debtor's paying the Cure Costs for all such Assumed Executory Contracts at Closing or as soon thereafter as is practicable.

M.    MFI would not have entered into the MFI Sale Agreement and will not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Transferred Assets were not free and clear of all Interests of any kind or nature whatsoever, or if MFI would, or in the future could, be liable for any of the Interests, and, subject to the terms of the MFI Sale Agreement, if the assignment of the Assumed Executory Contracts could not be made under 11 U.S.C. § 365.

N.    The Agreement was negotiated, proposed and entered into by the Debtor and MFI without collusion, in good faith, and at arm's length bargaining positions. The Purchase Price for the Transferred Assets set forth in the MFI Sale Agreement was not controlled by any agreement among any potential or actual bidders, and neither the Debtor nor MFI have engaged in any

74068:1

c:\My Documents

conduct that would cause or permit the Agreement to be avoided under 11 U.S.C. § 363(n). MFI

is not an "insider" of the Debtor, as that term is defined in Section 101(31) of the Bankruptcy

Code.

O.     MFI is a good faith purchaser and, as such, is entitled to all of the protections

afforded by Section 363(m) of the Bankruptcy Code.

P.     The Debtor has demonstrated that it is an exercise of its sound business judgment

to assume and assign the Assumed Executory Contracts to MFI in connection with the

consummation of the MFI Sale Agreement, and the assumption and assignment of the Assumed

Executory Contracts is in the best interests of the Debtor, its estate, and its creditors.  The

Assumed Executory Contracts being assigned to, and the corresponding liabilities being assumed

thereunder by, MFI are an integral part of the Transferred Assets being purchased by MFI and,

accordingly, such, assumption and assignment are reasonable, enhance to value of the Debtor's

estate, and do not constitute unfair discrimination.

Q.     The authorization and consummation of the sale of the Transferred Assets, and the

assumption and assignment of the Assumed Executory Contracts, pursuant to the terms and

conditions of the MFI Sale Agreement at this time are in the best interests of the Debtor, its

creditors, its estate and other parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED as follows:**

1.     The above described findings of fact and conclusions of law be and are hereby

incorporated herein as if fully set forth.

2.     All objections to the Sale Motion or the relief requested therein and granted

herein that have not been withdrawn, waived, or settled, and all reservations of rights included

therein, are hereby denied and overruled on the merits.

74068.1

c:\My Documents

19

3.      The Debtor be and is hereby ordered and directed forthwith to accept and execute

the MFI Sale Agreement for the purchase of the Transferred Assets pursuant to the terms and

conditions thereof and as announced in open court at the Sale Hearing, which MFI Sale

Agreement shall be substantially in the form attached as Exhibit A hereto, and the MFI Sale

Agreement is hereby approved.

4.      The Debtor be and is hereby authorized and directed to execute and deliver, and

empowered to perform under, consummate and implement, such documents or instruments to

transfer title of the Transferred Assets to MFI, and such other documents as may be necessary to

effectuate the terms and conditions of this Order and the MFI Sale Agreement.

5.      MFI shall have the benefits and protections of Section 363(m) of the Bankruptcy

Code.

6.      The adequacy and sufficiency of the form and amount of the Notice and the

persons receiving notice of the Sale Motion, Bidding Procedures, assumption of Executory

Contracts, Auction, Sale Hearing and MFI's participation herein are hereby approved and

ratified.

7.      Except as expressly set forth herein or in the MFI Sale Agreement, pursuant to 11

U.S.C. §§ 105(a) and 363(f), upon Closing, the sale and transfer of the Transferred Assets to MFI

pursuant to the MFI Sale Agreement shall be free and clear of any and all Interests of any kind or

nature whatsoever, with all such Interests to attach to the net sale proceeds in the order of their

priority, and with the same validity, force and effect which they now have as against the

Transferred Assets, subject to any claims and defenses the Debtor may possess with respect

thereto; provided, however, that pursuant to Section 12 of the Final Financing Order, the Debtor

is authorized and directed to remit to LaSalle at Closing an amount equal to the LaSalle

Indebtedness as agreed upon between the Debtor, the Committee and LaSalle or approved by order of the Court; and provided further, that nothing herein shall limit, affect, modify or impair the Committee's extension of the "Complaint Filing Deadline", as defined in the Final Financing Order and rights pursuant thereto, all of which rights are hereby expressly reserved.

8.    The Debtor be and it hereby is authorized and directed to assume and assign to MFI at the Closing pursuant to 11 U.S.C. §§ 105(a) and 365(a) each of the Assumed Executory Contracts free and clear of all Interests of any kind or nature whatsoever, subject only to: (i) MFI identifying in writing to the Debtor prior to the Closing which of the Assumed Executory Contracts MFI has determined, in its sole and absolute discretion, to have assumed and assigned to MFI pursuant to the Closing of the MFI Sale Agreement, and (ii) the Debtor's paying to each of the non-debtor parties to all such Assumed Executory Contracts the Cure Costs at Closing or as soon thereafter as is practicable. The Assumed Executory Contracts assigned to MFI at Closing shall be transferred and assigned to, and following the Closing remain in full force and effect for the benefit of MFI in accordance with their respective terms, notwithstanding any provision in any such Assumed Executory Contract. The Debtor is hereby authorized and directed to execute and deliver to MFI such documents or other instruments as may be reasonably necessary to assign and transfer such Assumed Executory Contracts to MFI at Closing. The Debtor's counsel be and is hereby directed to send a copy of this Order to all non-debtor parties to the Assumed Executory Contracts at the addresses shown in the Assumption Notice within three (3) business days from the entry hereof.

9.    All defaults, breaches or other obligations of the Debtor under any Assumed Executory Contract incurred, arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of any kind specified in Section 365(b)(2) of the

74068.1

21

c:\My Documents

Bankruptcy Code) shall be deemed and considered cured in full by the Debtor and MFI, as applicable and in accordance with the MFI Sale Agreement, by the payment of the Cure Costs associated with such Assumed Executory Contract at the Closing or as soon thereafter as is practicable, and MFI shall have no liability or obligation with respect to defaults, breaches or other obligations incurred, arising or accruing prior to the Closing, except as otherwise expressly provided herein or in the MFI Sale Agreement.

10.     Upon payment of the Cure Costs, each non-debtor party to any such Assumed Executory Contract is hereby forever barred, estopped, and permanently enjoined from asserting against the Debtor or MFI, or the property of either of them, any default or breach existing as of the Closing, or, as against MFI, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtor. MFI has provided adequate assurance of future performance of the Assumed Executory Contracts, as required by Sections 365 (b)(1) and (f)(2) of the Bankruptcy Code.

11.     From and after the Closing, with the exception of the obligations to be expressly assumed pursuant to this Order and the MFI Sale Agreement, MFI is not assuming, and shall have no liability whatsoever for, any existing or future claims against or liabilities of the Debtor to any person whomsoever, including, without limitation, all creditors or persons holding claims against the Debtor (including any and all vendors of "Prepaid Inventory", as defined in the MFI Sale Agreement) or interests in the Debtor. All persons and entities holding any claims against the Debtor (including, without limitation, any and all vendors of Prepaid Inventory) are, to the fullest extent permitted by applicable law, forever barred from asserting any such existing or future claims or liabilities against MFI.

12.    The terms and provisions of the MFI Sale Agreement, together with the terms and provisions of this Order, shall be binding in all respects on the Debtor, MFI, LaSalle, all Secured Claimants, all non-debtor parties to the Executory Contracts, the Committee, SMI, the Debtor's estate, all creditors (whether known or unknown, and whether holding contingent, unliquidated or disputed claims) and employees of the Debtor, any trustee appointed in this Case or in any subsequent case involving the Debtor under Chapter 7 or 11 of the Bankruptcy Code (and shall not be subject to rejection), and all other persons having any claim or Interest or asserting a claim against or an Interest in any of the Transferred Assets, including any assignees of any and all of the parties identified herein, and each of their respective predecessors or successors in interest and assigns.

13.    Nothing contained in any chapter 11 plan confirmed in this Case or in any Order of the Court confirming any such chapter 11 plan shall conflict with or modify the rights of MFI pursuant to the provisions of the MFI Sale Agreement or this Order.

14.    This Order (a) shall be effective as a determination that, as of the Closing, all Interests of any kind or nature whatsoever existing as or with respect to the Debtor or the Transferred Assets prior to the Closing have been unconditionally released, discharged and terminated (other than as expressly provided in the MFI Sale Agreement), and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any of the Transferred Assets.

15.    Effective upon the Closing, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Transferred Assets, if any, as such Interests may have been recorded or any otherwise exist.

16.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests in the Debtor or the Transferred Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, terminations statements, instruments of satisfaction, releases, of all Interests which the person or entity has with respect to the Debtor or the Transferred Assets or otherwise, then (a) the Debtor is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Transferred Assets, and (b) MFI is hereby authorized to file, register, or otherwise record a certified copy of this Order, which once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Transferred Assets or any kind or nature whatsoever.

17.    All entities who are presently, or on or after the Closing may be, in possession of some or all of the Transferred Assets are hereby directed to provide access to, and surrender possession of, the Transferred Assets to MFI on and after the Closing, with the Interests of such entity to be satisfied solely from the proceeds of the sale authorized herein.

18.    MFI is a buyer in good faith of the Transferred Assets and Business, and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code with respect thereto (including with respect to the assumption and assignment of any of the Assumed Executory Contracts).

19.    All amounts that become due or payable by the Debtor to MFI pursuant to the terms of the MFI Sale Agreement or pursuant to any claim (as defined in section 101(5) of the Bankruptcy Code) made by MFI against the Debtor with respect to the MFI Sale Agreement shall (i) constitute allowed administrative expenses under section 503(b)(1) and 507(a)(2) of the Bankruptcy Code, (ii) be paid without further notice, motion or application to, hearing before, or order from the Bankruptcy Court and (iii) not be discharged, modified or otherwise affected by any plan of reorganization of the Debtor. MFI shall not be required to file any proof of claim or request for administrative expense with respect to any such amount.

20.    This Court retains jurisdiction to construe and enforce this Order and determine and adjudicate any and all issues arising in connection with the MFI Sale Agreement.

21.    No Termination Fee shall be payable to SMI under the Bidding Procedures Order, the SMI Offer or otherwise.

22.    The SMI Deposit shall be held pending further order of this Court, and all parties expressly reserve each and every one of their respective rights, claims and remedies relating thereto, whether under the SMI Offer or otherwise.

23.    The MFI Sale Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this

Court, provided that any such modification, amendment or supplement is not a material

modification of this Order and does not have a material, adverse effect on the Debtor's estate.

24.     This Order is a final non-interlocutory order, shall be effective and enforceable

immediately pursuant to Bankruptcy Rules 7062 and 9014, and pursuant to Bankruptcy Rules

6004(g) and 6006(d), the 10 day stay of this Order be and is hereby waived in its entirety.

ENTER:

_____

U.S. BANKRUPTCY JUDGE

*This order prepared by:*

HOWARD L. ADELMAN, ESQ. (ARDC #0015458)
CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
HENRY B. MERENS, ESQ. (ARDC #6181695)
NATHAN Q. RUGG, ESQ. (ARDC #6272969)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
312/435-1050

Attorneys for the Debtor

74068.1

c:\My Documents